## F. TOMEI v. EUREKA-SECURITY FIRE & MARINE INS. CO.

Western Section.  July 31, 1926.

Petition for Certiorari denied by Supreme Court February 26, 1927.

1. **Insurance.  Policy held delivered when placed in the hands of an insurance agent who represented the insured.**
   In an action to recover on an insurance policy where the defense was that the policy had not been delivered and the evidence showed that the insured was an ignorant Italian who entrusted all of his insurance to an insurance agent and relied upon him to take care of his insurance, held that a delivery of the policy to the insurance agent constituted a delivery to the insured and the company was liable on the policy.

2. **Insurance.  Agents.  Insurance company held bound by the acts of its agent.**
   Where the agent of an insurance company had an office with another agent and they had an agreement that each one of them might write policies on the other's company and sign the name of the agent by the party writing it and a policy was so issued and the agent failed to notify the company of the issuance of the policy, held that the company was bound by the acts of its agent and it, rather than the insured, must suffer for the negligence of the agent.

Appeal from Chancery Court, Shelby County; Hon. D. W. De Haven, Chancellor.

Affirmed.

H. W. Moon, of Memphis, for appellant.

R. Lee Bartels, of Memphis, for appellee.

OWEN, J.  The defendant has appealed from a judgment rendered against it in the sum of $3000 on an insurance policy issued by the defendant's agent on the 26th of March, 1925.  The insured property was destroyed by fire early in the morning of March 31, 1925.  Defendant refused to pay the loss.  There was no question as to the amount of the loss or any question made upon the bona fides of the fire.  The defense is made that the policy of insurance had never taken the effect of a binding contract for the reason that it was substituted for another policy previously issued by another company which latter policy remained in force as an outstanding risk until after the property had been destroyed by fire and that the policy sued upon was to be effective only when the former policy was surrendered, and that the agent had no authority to deliver the policy to the insured when he did.

It appears that the complainant is an Italian.  He owns some property in Memphis, conducts a small grocery store and a restaurant; he is ignorant; his wife, Katherine Tomei testified that she is

of Polish nationality. She seems to be intelligent and can read and write. Complainant cannot read English and doesn't speak the English language. The complainant had trusted one T. C. Barnes, an insurance agent, and who represented the National Lumber Mutual Insurance Company to procure insurance for the complainant and complainant relied upon Barnes to keep his property insured. In the same office with Barnes there was another insurance agent by the name of F. E. Tryon, who was the local agent of the defendant company. It appears that Barnes and Tryon divided office expenses and employed jointly the same stenographer, Miss Vinson, and Miss Vinson was the policy clerk for both Barnes and Tryon. Barnes wrote a policy for $5000 in his company, dated the 23d day of March, 1925, but to take effect March 26, 1925, at noon, and to remain in force for one year. On March, 26, 1925, Barnes took the fire policy for $5000 upon complainant's storehouse and stock of goods to the complainant. He also delivered to the complainant a cyclone policy issued by the defendant company upon said storehouse, the fire insurance being written in the National Lumber Mutual Insurance Company. These two policies were delivered to the complainant. Barnes took lunch with complainant on March 26, 1925. The complainant paid $50 of the premium and told Barnes to return on the 31st of March and he would pay him the balance on the two policies, which balance would be about $80. The cyclone or windstorm policy in the defendant company was written for a premium of $8. The premium of the fire policy was $107.60, three thousand dollars covering the building occupied by complainant and $2000 covering the stock of merchandise and fixtures.

When Barnes returned to his office sometime early after the noon hour he found a telegram from his company ordering him to reduce the liability on Tomei to $2500. Rather than split the policy up in this way, Barnes wrote a policy in the National Lumber Company for $2000 on the stock of goods, fixtures, etc., and wrote a policy for $3000 on the building in the defendant company, signing Tryon's name, by T. C. Barnes. This appears to have been the custom between Barnes and Tryon. The policy issued by the defendant on March 23, 1925, covering the building and stock of goods and fixtures of the complainant protecting it as to cyclones and windstorms was signed by F. E. Tryon, agent, by T. C. Barnes. Barnes took these two policies, one in the defendant company for $3000 and the other in the National Lumberman's for two thousand dollars, and held them until March 31st when he went out, according to his agreement with complainant, to call on that day and receive the balance due for premiums. A notice of the issuance of this policy was placed upon Tryon's desk by Miss Vinson, which it was

her custom to do. The record doesn't show when Tryon returned to his office but the defendant claims that it did not receive any issuance of this policy until several days after the fire. Barnes and Miss Vinson both testified for the defendant. Tryon did not testify and his absence is unaccounted for.

In rendering his opinion, the Chancellor said: ''Really, the only question in the present case is whether or not by long usage and custom Barnes was such agent (authorized to accept notices of cancellation) for Tomei. It appears to me that he was. The fact that the old policy was not surrendered at once did not prevent the cancellation from being effective at the time the new policy was issued. The intention was that the new policy should be effective at once. The judgment of the court is that the policy for $5,000 in the National Lumberman was canceled on March 26, 1925, and the policy for $3000 in the Eureka was regularly issued and became effective on the same day. The delivery of this latter policy to Barnes was a delivery to Tomei.''

The defendant excepted to the decree of the Chancellor, prayed and was granted an appeal to this court and has assigned three errors:

The first is that the defendant is not liable because the insurance policy was delivered by one other than the agent of the defendant insurer, after complainant had suffered a loss by fire.

Second: There was no authority, express or implied, on the part of Barnes, agent of the National Lumber Mutual Insurance Company to accept on behalf of the insured Tomei's notice of cancellation and therefore notice by the National Lumber Mutual Insurance Company to Barnes to reduce the amount of the policy previous issued was not notice to the insured, and in the absence of such notice there could be no cancellation of the policy.

Third: If Barnes be treated as the broker for the insured in the matter of procuring the insurance, this does not carry with it implied power on the part of the agent to accept cancellations and change or substitute other policies.

The facts in the instant case show that Barnes had the authority to represent the complainant in all of his insurance matters. The complainant absolutely relied upon Barnes to place the insurance wherever it could be insured. Barnes and Tryon had a joint agreement to issue policies for each other. If Tryon could not place a risk with the defendant he turned it over to Barnes or wrote the policy in Barnes' company. We feel satisfied that Barnes would have taken the policy of the defendant to the complainant on March 26th had he not agreed to wait until March 31st for the balance of the premium. The defendant raises no objection to the issuance of its cyclone policy on this same property by Tryon and

Barnes in the same manner the fire insurance policy was issued. If there was any negligence on the part of anyone, it was Tryon in not notifying the defendant of the issuance of the policy on the day it was issued. Tryon was the defendant's agent, and we assume that he was under bond. At any rate, the defendant had trusted Tryon to write insurance, and when Tryon countersigned the policy it became binding, and if anyone is to suffer by the mistakes or negligence of Tryon it should be the defendant and not the complainant. Barnes informed the complainant on the morning after the fire what he (Barnes) had done in regard to canceling the $5000 policy in the National Lumber Company and had written a new policy in said company for $2000 and one in the defendant for $3000. Barnes further testified that he didn't want to deliver the two policies with one in the defendant for $3000 and the other in the National Lumber Company for $2000, until he could secure the $5000 policy.

Learned counsel for appellant has favored the court with a number of opinions published in the reporter system of the West Publishing Company, and which cases it is insisted sustain appellant's contention that it is not liable. We have read these cases and we are of opinion that they do not sustain appellant's insistence.

It results that all of the assignments of error are overruled and disallowed, and the judgment of the lower court is affirmed. Complainant will recover of the defendant and its surety on appeal bond the judgment rendered in the lower court, with interest thereon from the date of its rendition, and all of the costs of the cause, for which execution will issue.

Heiskell and Senter, JJ., concur.